## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| IN RE: | **CHRISTINA SIMS,** | : | **Chapter 7** |
| | | : | |
| | **Debtor(s)** | : | **Bky. No. 04-16783ELF** |
| | | : | |

# M E M O R A N D U M   O P I N I O N

**BY:  ERIC L. FRANK,  U.S.  BANKRUPTCY JUDGE**

## I.  INTRODUCTION

Before me is the objection by Christina M. Sims ("the Debtor") to the proof of claim filed by Citifinancial Mortgage Company, Inc. ("Citifinancial").  The proof of claim is based upon a mortgage loan between Citifinancial and the Debtor.  Resolution of this contested matter requires the application of fundamental principles of contract interpretation to both a settlement agreement between the parties in an adversary proceeding and the Debtor's confirmed Chapter 13 Plan.    For the reasons discussed below, I sustain the Debtor's objection in part and reduce Citifinancial's allowed claim from $269,506.49 to $238,706.90.[1]

## II.  FACTS AND PROCEDURAL HISTORY

The facts that give rise to this claims objection are rooted in a mortgage foreclosure judgment Citifinancial obtained against the Debtor in the Court of Common Pleas, Philadelphia

---

[1]  This Memorandum Opinion constitutes my findings of fact and conclusions of law pursuant to Fed. Rule of Bankr. P. 7052 as made applicable in  this contested matter by Fed. R. Bankr. P.  9014.

County on March 6, 2003 in the amount of $186,233.49.  The property at issue was the residence

the Debtor jointly owned with her mother ("the Subject Property").

      This bankruptcy case is the Debtor's third attempt to use the bankruptcy system.

Presumably, each case was filed in an attempt to prevent the foreclosure of the Subject Property.

The Debtor first filed a Chapter 13 bankruptcy case on June 2, 2003, docketed at Bky.  No.

03-18454.  This first case was dismissed on October 28, 2003. The Debtor's second Chapter 13

bankruptcy case was filed on February 2, 2004, docketed as Bky. No. 04-11409.  The second case

was dismissed on March 8, 2004, one month after filing, for failure to file the bankruptcy

schedules. The third filing (the present case) on May 13, 2004 did not prevent the sheriff's sale of

the Subject Property, which took place as scheduled on May 4, 2004.  At the May 4, 2004

sheriff's sale, the Subject Property was sold to Citifinancial. See Exhibit D-5 (Civil Docket

Report, Citifinancial Mortgage Company, Inc. v. Evans et. al., No. 3107, January Term 2003

(C.P. Phila.) at Docket Entry dated May 4, 2004).

      On July 26, 2004, the Debtor filed an adversary proceeding, Adv. No. 04-754, seeking to

avoid the sheriff's sale as a preference under section 547 of the Bankruptcy Code.  Shortly

thereafter, on August 27, 2004, Citifinancial filed Proof of Claim No. 1 setting forth a total claim

of $203,922.52 with an arrearage of $64,764.97.  On September 2, 2004, Citifinancial filed a

Proof of Claim No. 2 setting forth the amounts identical to those listed in Proof of Claim No. 1.[2]

      The adversary proceeding was tried on April 20, 2005.  Prior to submission of post-trial

---

[2] In her objection, the Debtor contends that Citifinancial's proofs of claim are duplicative
and that Citifinancial makes no reference as to whether Proof of Claim No. 2 Amends Proof of
Claim No. 1.  In its answer, Citifinancial admits this averment.  Therefore, I will disallow Proof
of Claim No. 1, leaving Proof of Claim No. 2 as the only claim at issue.

memoranda to the court, the parties settled their dispute.  The settlement was memorialized in a

Release and Settlement Agreement ("the Settlement Agreement") approved by the court on

November 4, 2005.  In essence, the Settlement Agreement provided for a second, private sale of

the property as follows:

> Citifinancial agrees to market the premises for an initial listing
> amount of $400,000.00, with the option to reduce the listing
> amount if no activity occurs within a reasonable period of time.
> Christina Sims agrees to accept any funds in excess of the full
> amount needed to repay the debt owed to Citifinancial at the date
> of closing.

See Exhibit D-1 (Settlement Agreement).

On November 22, 2005, within weeks of the court's approval of the Settlement

Agreement, the court confirmed the Debtor's Second Amended Plan ("the Confirmed Plan").

The Confirmed Plan references the Settlement Agreement in paragraph 3:

> The Debtor has filed an adversary proceeding seeking to avoid as a
> preference the sheriff's sale of the Home to the mortgagee,
> Citifinancial Mortgage Co. ("Citi").  **The Owners have proposed**
> **a settlement of the proceeding which they believe would be**
> **consistent with its outcome**, i.e., that the Home be sold, that Citi's
> former mortgage balance will be paid off with the proceeds, and
> that the remainder of the proceeds will be distributed to the
> Debtor's creditors and the trustees's commissions, with the balance
> to be refunded to the Owners.

See Debtor's Confirmed Plan ¶3 (emphasis added).

The Confirmed Plan also specifically provides for Citifinancial's proof of claim at

paragraph 4.B. as follows:

> The secured claim of [Citifinancial], which was filed in the amount
> of $203,992.52.  This claim, as allowed, will be paid in full with
> the sale of the proceeds.

<u>Id.</u>

The private sale of the residence ultimately occurred and closed for $380,000 on or about June 22, 2006 – nearly two years after this bankruptcy case was filed. On May 5, 2006, prior to the close of the sale, the Debtor filed this objection to Citifinancial' proof of claim, because Citifinancial pressed for a total payoff demand of $269,506.69 ("the Payoff Demand"), an amount the Debtor considered excessive. <u>See</u> Payoff Demand, Exhibit Citi-2. Citifinancial received full payment of the Payoff Demand at the closing on June 22, 2006.

Through this claims objection, the Debtor seeks to recover the difference between the total Payoff Demand Citifinancial received and what she believes Citifinancial was lawfully due. On August 23, 2006, the parties submitted a Stipulation of Exhibits and Facts.  On August 28, 2006, a hearing was held to complete the record.  Post-trial briefing by the parties was completed on October 23, 2006.

### III.  <u>THE CONTENTIONS OF THE PARTIES</u>

The Debtor objects to Citifinancial's proof of claim, asserting that payment of the amount of the Payoff Demand is inconsistent with the terms of the Confirmed Plan.  In particular, based upon paragraph 4.B of the Confirmed Plan, the Debtor argues that Citifinancial should be paid only the amount set forth in its proof of claim – $203,922.52.

While I understand the Debtor prefers that I allow the claim in the amount listed on the face of the proof of claim, she also concedes in her brief that Citifinancial might be entitled to more.  The Debtor offers two alternative arguments as to how the court should value the claim – both of which provide the Debtor a refund from the payoff Citifinancial received at the closing,

-4-

but allow Citifinancial more than the amount requested in its proof of claim.

First, the Debtor suggests that the "normal" method of fixing a claim should be applied because the underlying mortgage foreclosure judgment remains valid.  The Debtor proposes that Citifinancial should be entitled to the judgment of $186,233.49 plus interest at 6% through the date of settlement on June 22, 2006.[3]  This would yield a total claim of $223,061.37 and entitle the Debtor to a refund of $46,445.12.  Under this theory, I would essentially eviscerate the sheriff's sale, deem the judgment valid and treat the mortgage as having merged into the judgment under the "doctrine of merger."  See In re Stendardo, 991 F.2d 1089, 1095 (3d Cir. 1993); Hartman v. Otborn, 54 Pa. 120, 1234 (1867).

Alternatively, the Debtor proposes I apply paragraph 6 of the Mortgage to analyze whether Citifinancial has met its burden of proof to substantiate the Payoff Demand. The amount Citifinancial received at settlement is broken into the following seven (7) components ("the Payoff Components"):

---

[3]  Presumably, the Debtor chooses 6% as the appropriate interest rate as it is the legal rate of interest on judgments in Pennsylvania.  Compare 42 Pa. C.S. §8101 with 41 P.S. §202. The Debtor also assumes that the mortgage does not provide for accrual of post-judgment interest at a rate higher than the legal rate or that such a provision is not enforceable.  But see In re Stendardo, 991 F.2d 1089, 1095 (3d Cir. 1993) (under Pennyslvania law, "[p]arties to a mortgage may rely upon a particular provision post-judgment if the mortgage clearly evidences their intent to preserve the effectiveness of that provision post-judgment"); In re Crane Automotive, Inc., 98 B.R. 233, 236 (Bankr. W.D. Pa. 1989) (suggesting that express contract provision providing for post-judgment interest at a rate above the legal rate may be enforceable); Tierney v. Seidman, 1989 WL 817122 (C.P. Phila. March 13, 1989) (same).

| | |
|---|---|
| Principal Balance | $ 120,621.45 |
| Interest | $  85,447.13 |
| Escrow/Impound Advance | $        51.94 |
| Other Fees | $    3,450.21 |
| Expenses Paid | $   35,460.43 |
| Corporate Advances | $  21,529.33 |
| Foreclosure Costs | $    3,000.00 |
| Total Payoff | $269,506.69 |

The Debtor asserts that Citifinancial has not met its burden to support the Payoff Demand beyond the Payoff Components of (1) the Principal Balance and (2) Interest. These two Payoff Components total $206,068.58. However, the Debtor suggests that the language of the Mortgage may provide that Citifinancial is entitled to an additional amount of approximately $19,000: $15,000 for advances made to pay taxes, $3,000 for costs and $700 for reasonable attorneys fees.[4] This alternative methodology proposed by the Debtor yields an allowed claim for Citifinancial in roughly the same amount as the Debtor's first proposed method for fixing the claim.

Citifinancial urges me to reject the application of the "first" method of fixing a claim offered by the Debtor, contending that there no longer is a judgment in light of the sheriff's sale. Citifinancial also suggests that it was the intention of the parties to the Settlement Agreement, which the Confirmed Plan expressly adopts, that "the debt owed to Citifinancial at the date of closing" includes costs and fees it paid through the date of the private sale. Specifically, Citifinancial requests that its allowed claim include amounts for payments it made toward taxes, insurance or water and sewer payments during the pendency of the case between August 23, 2004, when Citifinancial filed its proof of claim, and June 22, 2006, the date of the private sale

---

[4] In connection with the potential allowance for attorney's fees, the Debtor cites to my decision In re Gordon-Brown, 340 B.R. 751 (Bankr. E.D. Pa. 2006).

of the Subject Property. Citifinancial therefore contends that all of the Payoff Components are proper and allowable.

## IV. DISCUSSION

### A.

A properly filed proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 501.  In a contested matter involving an objection to a proof of claim, the burden of proof rests on different parties at different times.  Even after an objection is filed, a properly filed proof of claim is prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f).  If an objection is filed to a proof of claim, the burden of proof may shift.  See  United States v. Baskin & Sears, P.C., 207 B.R. 84, 86 (E.D. Pa. 1997).  The Court of Appeals has concisely summarized the shifting burdens as follows:

> [A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim. It is often said that the objector must produce evidence equal in force to the prima facie case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.

In re Allegheny International, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992) (citations omitted).  See also In re Gimelson, 2004 WL 2713059, at *13 (E.D. Pa. 2004); In re Galloway, 220 B.R. 236, 244 (Bankr. E.D. Pa. 1998).

**B.**

In determining how to value Citifinancial's proof of claim, I must consider its treatment in the Confirmed Plan. See 11 U.S.C. § 1327(a); In re Szostek, 886 F.2d 1405 (3d Cir. 1989) (all parties are bound by the terms of a confirmed plan until it either is completed or is modified by the court); In re Bryant, 323 B.R. 635 (Bankr. E.D. Pa. 2005) (creditor who filed claim denoting both full amount of claim and a lower arrearage amount was bound by terms of confirmed chapter 13 plan that treated the lower sum as the amount necessary for full payment of the entire claim).

The Confirmed Plan refers to Citifinancial's claim in two different paragraphs. Paragraph 3 references the adversary proceeding the Debtor filed against Citifinancial and summarizes the Settlement Agreement; specifically stating that the proceeds from the sale of the home will pay off Citifinancial's "former mortgage balance." Then, paragraph 4 employs language more commonly found in chapter 13 plans by referring to the payment of a claim "as allowed." While both paragraphs contemplate that Citifinancial's claim will be paid with the proceeds from the private sale of the Subject Property, the two paragraphs refer to different documents as reference points for computing the proper amount to be distributed to Citifinancial.

I find that paragraphs 3 and 4, when read together, render the Confirmed Plan ambiguous as to the treatment of Citifinancial's claim. See USX Corp. v. Penn Cent. Corp., 130 F.3d 562, 566 (3d Cir.1997) (contract is ambiguous if the terms of the contract are susceptible of different meanings). To resolve this ambiguity in the Confirmed Plan, I must apply general principles of contract interpretation. In re Mershon, 2005 WL 4030035, *2 (Bankr. S.D. Ohio 2005) (citing In re Harvey, 213 F.3d 318, 321 (7th Cir. 2000)) ("[a] confirmed chapter 13 plan is essentially a

-8-

binding contract between a debtor and each creditor").

In this case, my function is to "interpret the contract's terms, in light of the apparent

purpose of the contract as a whole, the rules of contract construction, and extrinsic evidence of

intent and meaning."   Richard A. Lord, 11 <u>Williston on Contracts</u> §§ 30:4, 7 (West 2006)

("<u>Williston</u>").  I am mindful that the Confirmed Plan makes an express reference to the

settlement of the adversary. Though imprecise, the language seemingly incorporates the

agreement the parties reached to resolve the adversary proceeding – what I have referred to as the

Settlement Agreement in this Memorandum.  As explained by a leading treatise:

> Where the words employed to express some particular term of a
> contract are ambiguous and cannot be satisfactorily explained by
> reference to other parts of the contract and the parties have made
> other contracts in respect of the same subject matter, apparently in
> pursuance of the same general purpose, it is always permissible to
> examine all of them together in aid of the interpretation of the
> particular term; and if it is found that the ambiguous words have a
> plain meaning by a comparison of the several contracts and an
> examination of their provisions, that meaning should be attributed
> to them.  When an ambiguous contract by necessary implication
> refers to another document, the court may look to such document
> as additional evidence to ascertain the parties' intentions.

<u>Williston</u> § 30:26.  Accordingly, I find it necessary and appropriate to analyze the Settlement

Agreement in order to give effect to the operative language of the Confirmed Plan.

Interestingly, the Settlement Agreement also uses somewhat vague terminology.  It

provides that the proceeds from the sale of the residence would repay "the debt owed to

Citifinancial at the date of closing."  However, nowhere does the Settlement Agreement clarify

what instrument, if any, controls the calculation of the "debt owed."  Therefore, I must consider

the facts and circumstances surrounding the Settlement Agreement to ascertain the parties'

intentions.  See Martin v. Monumental Life Ins. Co., 240 F.3d 223, 232 (3d Cir. 2001) ; see also

Williston § 30:2.  Doing so enables me to ascertain the proper methodology for calculating

Citifinancial's allowed claim.

      The issue in the adversary proceeding was the validity of the sheriff's sale.  The parties

resolved the dispute by agreeing to a private sale of the subject property.  In exchange for

Citifinancial's agreement permitting the Debtor to realize some of the equity in the property

through a private sale, the Debtor agreed that Citifinancial should receive what it was lawfully

due under its original agreement with the Debtor – as set forth in the Mortgage and the Note.

      The mechanism employed to effect a settlement  – the private sale of the subject property

– made it unnecessary for the parties to address either the 2003 foreclosure judgment or the 2004

sheriff's sale and consequently, the Settlement Agreement is silent as to both.   The primary

contingency addressed in the Settlement Agreement was the possibility that the private sale

might not occur within a certain time frame.[5]

      After considering the circumstances surrounding the parties' entry into the Settlement

Agreement and the language of the document, I find that while the parties did not intend to

invalidate either the foreclosure judgment or the sheriff's sale, they did intend for the Mortgage

and the Note to be the controlling instruments in determining the "debt owed to Citifinancial at

the date of closing."   Put another way, the parties intended that the Settlement Agreement result

in the virtual restoration of the Mortgage for purposes of calculating the amount due Citifinancial

---

[5] An agreement of sale needed to be signed within 150 days.  Otherwise, the parties were
entitled to exercise their "rights, claims or defenses" they had asserted at that time "in reference
to the Home or the proceeding." See Exhibit D-1 at ¶ 1.b. Accordingly, the adversary proceeding
was held in suspense and the parties were precluded from engaging in any further litigation
unless an agreement of sale was no consummated within said time frame. Id. at ¶¶ 1.d. and 1.e.

at the closing of the projected private sale while simultaneously leaving the judgment and

sheriff's sale unimpaired but subject to further litigation in the adversary proceeding.


## C.

Having resolved the threshold ambiguity under the Settlement Agreement, I now return to

the Confirmed Plan, the operative instrument in this claims objection. Appreciating the tension

between the two paragraphs referencing Citifinancial's claim, I resolve that tension in favor of

paragraph 3 as I believe the overriding goal of the parties was to effectuate the settlement of the

adversary proceeding.

Paragraph 3 itself is not entirely free of ambiguity. I refer, in particular, to the meaning of

the term "former mortgage balance." The Debtor would have me construe the phrase in the past

tense. In other words, the Debtor would like me to read the word "former" to modify "mortgage

balance" as though the Mortgage no longer exists by virtue of the 2003 foreclosure judgment.

Thus, the Debtor would have me apply the judgment to fix the claim, if I chose not to use the

amount on the face of the proof of claim.

The Debtor's proffered construction clearly runs afoul to the parties intentions under

Settlement Agreement. As explained, the Settlement Agreement revived the Mortgage – not

legally, but as a means for calculating the amount of money to be distributed to Citifinancial

under the Confirmed Plan. Any doubt concerning the meaning of paragraph 3 must be construed

against the Debtor, the drafter of the Confirmed Plan. See Mershon, 2005 WL 4030035 at 2.

Therefore, as contemplated by the Confirmed Plan, the proceeds from the sale of the residence

were to be applied to pay off what Citifinancial is lawfully due under the Mortgage.

**D.**

I will now turn to the operative remedial language in the Mortgage.

Paragraph 6 of the Mortgage provides:

> In the event the Mortgagor defaults in the making of any payments due and payable under said Note or in the keeping and performance by Mortgagors of any of the conditions of covenants of this Mortgage or said Note, Mortgagee shall be entitled to the rents, issues and profits from the Mortgaged Premises and Mortgagee may forthwith bring an Action of Mortgage Foreclosure hereon or institute other foreclosure proceedings upon this Mortgage and may proceed to judgment and execution to recover **the balance due on said Note** and any other sums that may be due thereunder, including **reasonable attorney's fees**, **costs of suit**, and **costs of sale**, all as allowed by law, together with interest after judgment until the full amount due Mortgagee is paid.

Exhibit D-3 (Mortgage)  (emphasis added).

The Note incorporates the Mortgage's remedies for a default by stating:

> If [Mortgagor] defaults . . . [Mortgagee] ha[s] the rights and remedies provided for in the Mortgage that secures this loan, including the right to require [Mortgagor] to pay any deficiency.

Exhibit D-4 (Note).

The only additional remedial provision in the Note provides for attorney's fees, but it is

seemingly redundant:

> [Mortgagor] agree[s] to pay reasonable attorney's fees if this Note is referred for[6] collection to an attorney who is not [Mortgagee's] salaried employee.

Id.

---

[6] The court's copy of the Note was a bit fuzzy. This one word was indiscernible but I read the word "for" into the provision based on its context.

_____The remedies provided to Citifinancial by the Mortgage are noticeably limited in scope.

Many residential mortgages authorize mortgage lenders to make advances for delinquent taxes,

water or other charges and then add those advances to the debt secured by the mortgage.[7]

However, the mortgage between Citifinancial and the Debtor here contains no such provision.

Based on the plain language of the Mortgage, in calculating the amount due, I find that

Citifinancial's entitlement is limited to four (4) components: (1) balance due on the note (i.e.,

unpaid principal and accrued interest); (2) reasonable attorneys fees; (3) costs of suit; and (4)

costs of sale.

What complicates analysis of the parties' dispute is that the Payoff Demand of

$269,506.69 is comprised of seven (7) Payoff Components that are not easily reconciled with the

four (4) components set forth in the Mortgage.  The Payoff Demand consisted of:  (1) Principal

Balance; (2) Interest; (3) Escrow/Impound Advance; (4) Other Fees; (5) Expenses Paid; (6)

---

[7]  For instance, recently, in In re Pitts, 2006 WL 3231287, 17 & n.22 (Bankr. E.D. Pa. November 8, 2006), I quoted the provision of a mortgage which provided the lender with the authority to make advances and add the advanced sums to the mortgage debt:

> If Borrower fails to perform the covenants 1and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), ***then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the property***.  Lender's actions may include paying ***any sums secured by a lien which has priority over this Security Instrument***, appearing in court [and] paying reasonable attorneys' fees. . . .  Any amounts disbursed by the Lender under this paragraph 7 ***shall become additional debt of Borrower*** secured by this Security Agreement.

(emphasis added).

Corporate Advances; and (7) Foreclosure Costs and Counsel Fees.  Consequently, I must
compare the Payoff Components with the terms of the Mortgage in order to determine whether
Citifinancial has met its burden of proof and is entitled to allowance in its proof of claim of the
full amount of the Payoff Amount.

## E.

To begin, the Debtor does not contest the first two Payoff Components, the Principal
Balance and Interest.   Therefore, those amounts will be allowed.[8]

As to the remaining five Payoff Components, Citifinancial submitted into evidence
attorney invoices and a five (5) page document entitled "Fee Breakdown," which provides a line-
by-line list of costs and fees associated under three Payoff Components – "Other Fees,"
"Expenses Paid," and "Corporate Advances."  See  Exhibit Citi-3 (Fee Breakdown).[9]

Following the general format employed in Exhibit Citi-3, I have prepared several tables
and summaries to explain the items I am allowing or disallowing and to associate those items
with the appropriate Mortgage provision authorizing Citifinancial to hold the Debtor liable for
charges other than principal and interest on the Note.  After each table, I provide a brief
explanation of the reasons why the items have been allowed or disallowed.

---

[8] These two Payoff Components total $206,068.58 (principal balance of $120,621.45 and
accrued  interest of $85,447.13).

[9] In my review of the entries listed on the Fee Breakdown, I observed some overlap.  For
instance, there are entries for attorneys fees and costs, inspections and title searches under at least
two, if not three Payoff Components. I am not exactly clear why such overlap exists and
Citifinancial did not clarify this for me at the hearing.  However, understanding the distinctions
among these separate Payoff Components is not germane for me to resolve this matter.  I was
able to parse through the Fee Breakdown to evaluate the individual entries.

**Table I: Expense Advances**

| Incurred | Description | Cost | Allowed/Disallowed | Mortgage Provision |
|---|---|---|---|---|
| 1/26/2005 | Eviction costs | $ 241.50 | Disallowed | none |
| 1/26/2005 | Eviction attorney | $ 400.00 | Disallowed | none |
| 1/26/5005 | Sheriff's settlement | $ 1,316.00 | Disallowed | none |
| 5/5/2004 | Title Search | $ 125.00 | Allowed | costs of sale |
| 5/5/2004 | FCL Attorney Fee | $ 300.00 | Allowed | reasonable atty fees |
| 5/5/2004 | FCL Attorney Costs | $ 27,614.32 | Allowed | costs of sale |
| 5/5/2004 | Process Server | $ 607.50 | Allowed | costs of suit |
| 5/5/2004 | Recording Fee | $ 74.50 | Allowed | costs of sale |
| 5/5/2004 | Filing Fee | $ 30.00 | Allowed | costs of suit |
| 6/11/2003 | Title Search | $ 425.00 | Allowed | costs of sale |
| 6/11/2003 | FCL Attorney Fee | $ 1,625.00 | Allowed, but reduced | reasonable atty fees |
| 6/11/2003 | FCL Attorney Costs | $ 2,125.00 | Allowed | costs of sale |
| 6/11/2003 | Process Server | $ 392.00 | Allowed | costs of suit |
| 6/11/2003 | Filing Fee | $ 105.50 | Allowed | costs of suit |
| [Blank] | [Unexplained] | $ 25.61 | Disallowed | none |
| | **Total Expenses** | **$ 35,406.43** | | |

As set forth in Table I, I find that of the Expense Advances, $32,498.82 will be allowed and $2,908.11 will be disallowed. Of the allowed expenses, $1,134.50 are attributed to costs of suit, $30,363.82 are attributed to costs of sale, and $1,000 are attributed to reasonable attorneys fees.

A further explanation is necessary with respect to the $27,614.32 listed in Table I as "FCL Attorney Costs." This charge was given detailed treatment at the hearing and in Citifinancial's brief.[10] Based on the evidence, I conclude that the charges are not attorney's fees,

---

[10] Citifinancial's brief broke down the fees that comprise the total $27,614.32:

| | |
|---|---|
| Advertising Costs | $ 1,596.64 |
| Writ Rec. Pro. Service Fee | $ 100.00 |
| Conduct & Proc. Sale Fee | $ 200.00 |
| Commission on Sale | $ 2,300.00 |

but rather out-of-pocket foreclosure expenses advanced by Citifinancial's attorney, paid to third

parties (primarily the sheriff) and reimbursed to counsel by Citifinancial.  All such costs were

necessary to effectuate a sale and settle with the sheriff on May 4, 2005.  Therefore, I am

allowing the costs, but re-categorizing them as "costs of sale," rather than as attorney costs.


As for the attorneys fees, I find that the $1,625.00 incurred in 2003 is attributable to the

foreclosure action, which was initially stayed, after the entry of a default judgment against the

Debtor, by the filing of the Debtor's first bankruptcy case.[11]  However, I will reduce those fees to

$700.00 pursuant to my decision in Gordon-Brown.[12]  I will allow an additional $300.00 incurred

in 2004 for the work performed between the second and third bankruptcy cases to effectuate the

---

| | |
|---|---:|
| Distribution Policy | $   702.50 |
| City Transfer Tax Stamps | $ 4,006.17 |
| Acknowledgment of Deed | $     4.00 |
| Water and Sewer Rents | $ 7,857.63 |
| Current City and School Taxes | $ 3,255.35 |
| Delinquent City and School Taxes | $ 3,537.45 |
| PGW | $ 3,844.58 |
| Deed Prep | $     85.00 |
| Total | $27,489.32 |

[11] An invoice dated June 4, 2003 indicates that the $1,625 in "counsel fees" is broken
down as follows:

| | |
|---|---:|
| Standard Foreclosure Fee | $1,250 |
| Act 1560 (Act 91) Letters | $  125 |
| Title Insurance Claim | $  250 |
| Total Counsel Fees | $1,625 |

[12] In Gordon-Brown, I reduced the amount of a fixed fee for a standard foreclosure
because the record was insufficient.  I used 3.5 hours as a reasonable amount of time and $200
per hour as a reasonable rate in my application of the lodestar method to arrive at $700.

2004 sheriff's sale.

I am disallowing the January 26, 2005 costs totaling $ 1,975 that pertained to an eviction

action, presumably against the Debtor. There is nothing in the language of the Mortgage or Note

that entitles Citifinancial to these costs, which were incurred <u>after</u> the sheriff's sale.  I also am

disallowing the charge of $25.61 because it had no date entry and was unexplained by

Citifinancial.

### Table II: Corporate Advances[13]

| Incurred | Description | | Cost | Allowed/Disallowed | Mortgage Provision |
|---|---|---|---|---|---|
| 5/23/2002 | Fcl Fees | $ | 296.00 | Disallowed | none |
| 5/23/2002 | Fcl Costs | $ | 100.00 | Disallowed | none |
| 3/18/2002 | City of Philadelphia | $ | 18,775.78 | | none |
| 6/23/2003- 11/29/2005 | Source One Cor (BPO) | $ | 1,430.00 | Disallowed | none |
| 3/11/2003 | Land American Default Ser (Title Bringdown) | $ | 135.00 | Allowed | cost of suit |
| 9/16/2002 | Title Report | $ | 250.00 | Disallowed | none |
| 5/24/2002 | Corp Adv (3) | $ | 396.00 | Disallowed | none |
| 9/20/2005 | unexplained | $ | 7.75 | Disallowed | none |
| 4/0/2004- 12/29/2005 | Inspections (17) | $ | 139.00 | Disallowed | none |
| | **Total Corporate Expenses** | **$ 21,529.53** | | | |

---

[13] On the Fee Breakdown Exhibit, there were several more individual entries for items
such as property inspections, BPOs and Corp Advances in this "Corporate Advances" Payoff
Element.  For purposes of summary, I truncated those individual entries and provided the total
number of times in parentheses.  The cost reflects the amount for the total number of that item.

I find that of the Corporate Advances, only $135.00 will be allowed for the 2003 "Title Bringdown" fee because it is attributable to the costs of sale. See In re McMillan, 182 B.R. 11, 15 (Bankr. E.D. Pa. 1995). I am disallowing the remaining $21,394.53.

I will first address my disallowance of the substantial payment of $18,775.78 allegedly made to the City of Philadelphia. If for no other reason than the record did not explain or corroborate the reasons for the costs, I am disallowing it. Citifinancial states only that payment was for taxes, water and sewer payments. The Debtor rebutted this evidence by testifying that although there was a tax delinquency, she paid her taxes through 2001 and thereafter, there was only approximately $15,000 in tax liability. Citifinancial did not reconcile this 2002 figure with the $18,493.01 for delinquent and current tax liability, water and sewage costs paid to settle with the sheriff in May 2004.[14] In other words, the evidence presented suggests a substantial possibility that the amount claimed duplicated the City charges paid to obtain the sheriff's deed in foreclosure.

Even if the Debtor's testimony was inaccurate and Citifinancial advanced $18,775.78 for unpaid real estate taxes in and prior to 2002 and then advanced additional substantial sums in closing with the sheriff for real estate taxes accruing after 2002, I still find that this Corporate Advance is not allowable. This Corporate Advance was not made in connection with the sale of the property. Therefore, it cannot be characterized under the Mortgage as a cost of sale and there is no provision in the Mortgage that permits Citifinancial to recover Corporate Advances. As

---

[14] See infra. n. 10. Of the $27,614.36 that was deemed allowed as a cost of sale, $18,493.01 was attributed to similar costs: (1) water and sewer rents: (2) current city and school taxes; (3) delinquent city and school taxers; and (4) PGW.

explained above, the Mortgage does not authorize Citifinancial to advance money to pay taxes, water or other charges because the Debtor has failed to pay such charges or because Citifinancial deems its lien position to be insecure. While Citifinancial's decision to make the alleged Corporate Advances is understandable, the Mortgage does not entitle Citifinancial to add those payments to the outstanding mortgage debt.

I am also disallowing the 2002  "Fcl Fees" and "Fcl Costs" totaling $396.00, the "Corp Adv" costs totaling $396.00, and the 2002 Title Report for $250.00.  These entries are from 2002 and have not been attributed to either the 2003 foreclosure action or the 2004 sheriff's sale. Citifinancial has not provided any explanation as to the nature of the costs or why they were incurred.  Nor has Citifinancial provided any invoices to substantiate these fees or costs.

Finally, I am disallowing the cost for the seventeen (17) inspections that occurred between April 2004 and December 2005 and the eight appraisals/BPOs  that occurred between June 2003 and November 2005.  See In re Giordano, 234 B.R. 645, 651 (Bankr. E.D. Pa. 1999) (inspection fee disallowed); In re Galloway, 220 B.R. 236, 243-44 (Bankr. E.D. Pa. 1998) (same); In re Rorie, 98 B.R. 215, 221 (Bankr. E.D. Pa. 1998) (appraisal fee not covered by mortgage cost shifting provision).

**Table III: Other Fees**

| Incurred | Description | Cost | Allowed/Disallowed | Mortgage Provision |
|---|---|---|---|---|
| 3/22/2002 | NSF Fee | $ 20.00 | Disallowed | none |
| 1/29/2003 | Fax Payoff Stmt | $ 5.00 | Disallowed | none |
| 12/16/2002 | Fcl Attorney Bills | $ 3,309.96 | Disallowed | none |
| 2/19/2002 and 3/28/2002 | Speed Pay Fee (2) | $ 30.00 | Disallowed | none |
| 6/18/2002-6/13/2002 | Inspections (11) | $ 85.25 | Disallowed | none |
| | **Total Other Fees** | $ 3,450.21 | | |

Next, I am disallowing the entire $3,450.21 of "Other Fees." The items listed as "Other Fees" in Table III appear indistinguishable from certain "Corporate Advances" in Table II (with the exception of the line item "Fcl Attorney Bills"). It is not to me clear why Citifinancial separated out these "Other Fees." However, because I find them indistinguishable, I am disallowing them for the same reasons stated for my disallowance of those Corporate Advances. As for the "Fcl Attorney Bills," these charges were incurred in 2002, prior to the initiation of the 2003 foreclosure litigation that resulted in the entry of the default judgment and, eventually, the sheriff's sale. I have already allowed some attorney's fees for the 2003 foreclosure litigation. See Table I & accompanying discussion. Citifinancial has offered no evidence explaining the relationship between the "2002 Fcl Attorney Bills" and the later foreclosure. Therefore, I will disallow the charges.

Finally, I address the remaining two Payoff Components that were not detailed in the Fee Breakdown, but were included in the Payoff Demand: Escrow/Impound Advance ($51.94) and Foreclosure Costs and Counsel Fees ($3,000). I am disallowing both of them. Once again, I

-20-

have already determined that Citifinancial is entitled to reasonable attorneys' fees in the amount

of $1,000 as the foreclosure attorney's fees for work in 2003 and 2004 in connection with the

default judgment obtained in state court and the sheriff's sale of the property.  I am troubled by

the fact that Citifinancial requested a total of $35,370.28 in attorney fees and costs for 2002,

2003 and 2004 in three other Payoff Components, yet there is nothing in the record to support the

additional request for $3,000 under  "Foreclosure Costs & Counsel Fees."  Citifinancial has the

burden of establishing the reasonableness of these fees under the terms of the Mortgage. Absent

any supporting evidence, I must disallow the requested fees.  For similar reasons, I am

disallowing the request under "Escrow/Impound Advance."  Citifinancial has neither explained

the nature of the "Escrow/Impound Advance," why it was incurred or the provision of the

Mortgage entitling Citifinancial to add this expenditure to the mortgage debt.


### F.

In summary, Citifinancial filed a proof of claim worth $203,922.52.  The Debtor objected

on the basis that at the closing of the private sale of the Debtor's residence in June 2006,

Citifinancial received more than it requested on the face of its proof of claim (i.e., it received its

Payoff Demand of $269,506.49).  Pursuant to the terms of the Mortgage, I find that Citifinancial

is entitled to an allowed claim of only $238,701.90.  This constitutes a reduction of $30,804.59

from the amount Citifinancial received at the closing of the private sale.[15]

The allowed claim is comprised of the following:

---

[15]  I anticipate therefore, that Citifinancial will refund to the Debtor $30,804.59, plus
interest running from the date of the private sale closing.

Balance Due on the Note     $206,068.58
Costs of Suit                      $   1,139.50
Costs of Sale                     $ 30,493.82
Reasonable Attorneys Fees   $   1,000.00
Total Proof of Claim            $238,701.90

An Order consistent with this Memorandum Opinion will be entered.


Date:    **December 28, 2006**                    _____
                                                                         **ERIC L. FRANK**
                                                                         **U.S. BANKRUPTCY JUDGE**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

IN RE:  **CHRISTINA SIMS,**  :  **Chapter 7**
                            :
        **Debtor(s)**       :  **Bky. No. 04-16783ELF**
                            :

## O R D E R

    **AND NOW,** upon consideration of the Debtor's Objection to the Proof of Claim filed by

Citifinancial Mortgage Company, Inc. ("Citifinancial"), the responses thereto, and after a

hearing, and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that:

1. The Objection is **OVERRULED IN PART AND SUSTAINED IN PART**.

2. Proof of Claim No. 1 filed by Citifinancial is **DISALLOWED**.

3. Proof of Claim No. 2 filed by Citifinancial's is **ALLOWED** in the amount of **$238,701.90**.


Date:  **December 28, 2006**

                                             **ERIC L. FRANK**
                                             **U.S. BANKRUPTCY JUDGE**